690 So.2d 850 (1997)
STATE of Louisiana
v.
George WRIGHT.
No. CR96-786.
Court of Appeal of Louisiana, Third Circuit.
February 19, 1997.
*851 Michael Harson, Daniel M. Landry, III, Asst. Dist. Atty., Lafayette, for State of Louisiana.
*852 G. Paul Marx, Lafayette, for George Wright.
Before WOODARD, PETERS and GREMILLION, JJ.
WOODARD, Judge.
Defendant was convicted of aggravated rape of a juvenile. At trial, the victim was allowed to testify via two-way television. Defendant asserts that such testimony violated his Sixth Amendment right to confrontation and appeals his conviction. We reverse and remand.

FACTS
On September 20, 1995, the defendant, George Wright, was convicted of aggravated rape of a juvenile, in violation of La.R.S. 14:42, after a jury trial on September 18 through 20, 1995. At the trial, the victim, a nine-year-old boy, was allowed to testify by two-way, closed-circuit television pursuant to La.R.S. 15:283. On January 18, 1996, the defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction.
ASSIGNMENTS OF ERROR
Defendant claims the following assignments of error:
(1) The trial court erred in that it authorized testimony by a rape victim on video camera, without sufficient showing of compelling need, in violation of the right to confront the witness.
(2) The trial court erred in admitting a photo lineup and the identifications resulting from that lineup, because the photo lineup was unduly suggestive.
(3) The trial court erred in finding that a statement in response to questions was admissible despite the failure of the officers to give the Miranda warning.
(4) The evidence was insufficient to convict of the consummated offense because the state did not offer medical evidence to confirm penetration.

LAW
In his first assignment of error, the defendant asserts that the trial court erred in authorizing the use of two-way cameras, in order for the victim to testify, without sufficient showing of compelling need, in violation of his Sixth Amendment right to confront his accuser. La.R.S. 15:283, the statute authorizing such testimony, states in pertinent part:
A. On its own motion or on the motion of the attorney for any party, a court may order that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury, when the court makes a specific finding of necessity based upon both of the following:
(1) Expert testimony that the child would be likely to suffer serious emotional distress if forced to give testimony in open court.
(2) Expert testimony that, without such simultaneous televised testimony, the child cannot reasonably communicate his testimony to the court or jury.
B. The court shall ensure that the child cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during the testimony of the child.
Defendant asserts that the specific finding of necessity, as required by section 15:283(A)(1), was not met because the trial court heard no testimony, and made no findings, regarding whether the child would suffer trauma from testifying in the presence of the defendant himself, and not the courtroom environment in general. Because the defendant argues that his constitutional right to confrontation has been violated by this procedure, we must consider the defendant's claim in light of prior United States Supreme Court jurisprudence.

RIGHT TO CONFRONTATION
The Confrontation Clause of the Sixth Amendment to the United States Constitution *853 provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.... " U.S. Const. amend. VI. This amendment is made applicable to the states through the Fourteenth Amendment and has been held to provide "two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." Coy v. Iowa, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987)). The Supreme Court has further held that they "have never doubted, therefore, that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Id. at 1016, 108 S.Ct. at 2801.
Although a defendant's right to physical, face-to-face confrontation is guaranteed by the Sixth Amendment, the Supreme Court, in Maryland v. Craig, 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990) (quoting Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980)), held that "our precedents establish that `the Confrontation Clause reflects a preference for face-to-face confrontation at trial.' " The Court further stated that:
Thus, though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers.
Id. at 849-850, 110 S.Ct. at 3165-3166. This preference for physical, face-to-face confrontation "may be overcome in a particular case if close examination of `competing interests' so warrants." Coy, 487 U.S. at 1024, 108 S.Ct. at 2805. In determining whether the circumstances of a particular case warrant an abridgment of the right to physical confrontation, the Court agreed with the reasoning of the appellate court and held that:
"[T]he question of whether a child is unavailable to testify ... should not be asked in terms of inability to testify in the ordinary courtroom setting, but in the much narrower terms of the witness's inability to testify in the presence of the accused."
Craig, 497 U.S. at 858, 110 S.Ct. at 3170 (quoting Craig v. Maryland, 316 Md. 551, 564, 560 A.2d 1120, 1126 (1989)). Thus, the Confrontation Clause requires, as a prerequisite to use of a statute authorizing video testimony in such cases, that the trial court make a specific finding that the procedure requested is necessary to protect the welfare of the particular child witness who seeks to testify and that "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." Id. at 856, 110 S.Ct. at 3169. Furthermore, the trial court "must find that the emotional distress suffered ... is more than de minimis, i.e., more than `mere nervousness or excitement or some reluctance to testify.'" Id.
A specific showing that the witness would suffer emotional trauma by the presence of the defendant, as opposed to suffering trauma from the courtroom atmosphere in general, is required because:
Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma.
Id. It is under these guidelines that La.R.S. 15:283 must be analyzed.
La.R.S. 15:283(A)(1) and (2) authorize testimony by closed-circuit television if the court makes a specific finding of necessity based on "[e]xpert testimony that the child would be likely to suffer serious emotional distress if forced to give testimony in open court" and if without "simultaneous televised testimony, the child cannot reasonably communicate his testimony to the court or jury." (Emphasis added). The statute, on its face, however, merely requires a finding of distress from testifying "in open court," and makes no mention of the specific finding required by the Supreme Court that the child must suffer emotional distress due to the presence of the defendant. While we are not directly faced with a challenge to the constitutionality of La.R.S. 15:283, and no cases of the supreme court or courts of appeal of this state have addressed the constitutionality of this statute after Craig, the *854 failure of La.R.S. 15:283 to expressly require a showing of trauma caused by the presence of the defendant is an omission which clearly requires legislative consideration. Despite this omission, however, we must still determine whether the statute was applied in accordance with the Supreme Court's ruling in Craig.
The Ninth and Tenth Circuit Court of Appeals have ruled on cases involving a federal statute, 18 U.S.C. § 3509, which is similar to La.R.S. 15:283. While these cases are not controlling on this court, we find them illuminating. In both cases, the courts held that the statute was constitutional because it authorized televised testimony only if the child is "unable to testify in open court in the presence of the defendant. ..." United States v. Carrier, 9 F.3d 867 (10th Cir.1993); 18 U.S.C. § 3509; U.S. v. Garcia, 7 F.3d 885 (9th Cir.1993), (Emphasis added). While the federal statute authorizes televised testimony if "[t]he child is unable to testify because of fear," such wording was interpreted in light of the requirement that the testimony be "in the presence of the defendant" and in light of the Supreme Court's holding in Craig. Carrier, 9 F.3d 867; Garcia, 7 F.3d 885. In both cases, the courts upheld the use of televised testimony because the trial courts had made specific findings that the children in question would suffer emotional trauma due to the presence of the defendant. Carrier, 9 F.3d 867; Garcia, 7 F.3d 885. In the present case, however, we find that the trial court failed to make the specific findings, as required by the Supreme Court in Craig and in the cases cited above, that the witness would suffer emotional trauma due to the presence of the defendant.
In the case sub judice, the trial court relied on the testimony of Dr. Lyle LeCorgne, a licensed clinical psychologist, who testified that it would be in the victim's best interest not to appear in open court for a variety of reasons, as follows:
One of the most essential reasons is that this was a traumatic experience for this boy and he is only beginning nowover six months of working with me to develop the kind of comfort and freedom to explore this issue indicating the extent to which it remains very unresolved and very much an emotional struggle for him internally.
. . . .
The difficulty with which this child has had in addressing this issue in the safety and comfort of a therapy session, even given the degree of trust and confidence in my relationship which has been established, has made it difficult for him to express his feelings and to articulate his thoughts about this matter. To expect him at the tender age of nine (9) to be able to do so in this setting is not a reasonable expectation in my opinion.
On cross-examination, defense counsel asked Dr. LeCorgne to explain what he meant by his use of the words "this setting." Dr. LeCorgne responded, "[T]he courtroom setting, which for most adults arouses a tremendous amount of tension and anxiety and apprehension." Defense counsel then asked, "And you've indicated you base this opinion upon, as you stated earlier, to Mr. Landry, a sea of faces in the courtroom and the direct and cross-examination; is that correct?" Dr. LeCorgne responded, "Yes, sir." After hearing arguments by counsel, the trial court ruled as follows:
I'm glad you mentioned the wide latitude that the Court has. It's my opinion that the testimony of the doctor on the first requirement, that hewhether or not he would suffer emotional distress, he said absolutely, that in his opinion he would. And whether the child could reasonably communicate his testimony to the court or jury, he said he didn't think he could do that. That was his opinion. Now, whether or not the doctor was right in that, that's something else, but that's the only testimony that we have.
And for those reasons, I'm going to allow the child to testify via closed-circuit television, to which you object to and your objection is noted.
As can be seen, the trial court did not make a specific finding that the victim would suffer emotional distress due to the presence of the defendant. On cross-examination, Dr. LeCorgne reiterated that he felt the distress would come from "the courtroom setting" and the "sea of faces in the courtroom." These reasons were specifically found to be insufficient for the purposes of permitting the use of videotaped testimony by the Supreme Court in Craig. As such, we find that *855 the defendant was denied the right to confrontation as guaranteed by the Sixth Amendment to the United States Constitution.

HARMLESS ERROR
Although we find that the defendant was denied his right to confrontation, that finding does not end our analysis. The Court in Coy, as well as the Louisiana Supreme Court in State v. Murphy, 542 So.2d 1373 (La.1989), held that denial of face-to-face confrontation is subject to a harmless error analysis. Coy, 487 U.S. at 1012, 108 S.Ct. at 2798, 101 L.Ed.2d 857. Louisiana has adopted the harmless error test as announced in Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), which examines whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." State v. Gibson, 391 So.2d 421 (La.1980). The Chapman test was refined in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "The Sullivan inquiry `is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" State v. Johnson, 94-1379, p. 14 (La.11/27/95); 664 So.2d 94, 100 (quoting Sullivan v. Louisiana, 508 U.S. at 278-79, 113 S.Ct. at 2081 (1993)) (Emphasis added). If the error was harmful, the defendant's sentence must be reversed. However, the Supreme Court has held that even with a finding of harmful error, if the overall evidence, including the victim's testimony, is sufficient to support the conviction, the state is entitled to retry the defendant. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); Murphy, 542 So.2d 1373.
Thus, we must first determine whether the error was harmless. If the error was harmless, we must then address the defendant's fourth assertion of error and determine whether, excluding the child's testimony, there was sufficient evidence to establish all of the elements of the crime, specifically, whether sufficient evidence was introduced to prove penetration. If the error was harmless and the evidence was sufficient to establish penetration, we must affirm the defendant's sentence. If, however, the error was not harmless, we must reverse the defendant's conviction. Finally, under the rule enunciated in Lockhart, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265, we must determine whether the overall evidence, including the victim's testimony, is sufficient to support a conviction, entitling the state to retry the defendant.
Because the Sullivan analysis for harmless error is "whether the guilty verdict... in this trial was surely unattributable to the error," any harmless error analysis must necessarily be made on a case-by-case basis. 508 U.S. at 279, 113 S.Ct. at 2081. Nonetheless, we find the supreme court's holding in Murphy, 542 So.2d 1373, a case very similar to the present case, illuminating. In Murphy, the defendant was convicted of indecent behavior with a juvenile. On appeal, the supreme court determined that the state had denied the defendant his right to face-to-face confrontation. The court proceeded to analyze the evidence, excluding the testimony of the victim, to determine whether the error was harmless. In so doing, the supreme court stated:
The evidence, other than the child's testimony in court, consisted of her hearsay statements to her mother and to the police, as well as the mother's testimony that the vaginal area "looked red" (a condition apparently not observed during the child's bath) and the child's stepfather's testimony (denied by defendant) that the child was sitting on defendant's lap alone in the room when the stepfather arrived at defendant's home on the evening in question. There were no vaginal tears or abrasions or other physical evidence indicating abuse. We therefore conclude that the remaining evidence in this case falls short of establishing that the confrontation error was harmless beyond a reasonable doubt.
Id. at 1376-77. Like Murphy, the evidence in the present case, excluding the testimony of the victim, consisted of hearsay statements made to the child's parents and evidence that the defendant was with the child in a sexual way. First, the victim's mother testified that he came home directly after the occurrence, screaming and crying. Immediately upon entering the house he stated, "Mama, I was raped." When his mother asked him to repeat what he had said, the victim again stated, *856 "I was raped in the park." The victim's father also testified that, while alone with the victim, he told him that the defendant had "stuck his penis in him and he pumped on him severalseveral times." Although both of these statements are hearsay, defense counsel did not object to their introduction at trial. They are, therefore, admissible. However, while these statements are admissible and tend to support a finding of penetration, we cannot extricate the effect of this child's televised testimony from the remainder of evidence adduced at trial. Thus, we cannot find that the guilty verdict rendered was "surely unattributable" to the child's testimony as required by Sullivan, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182. We must, therefore, conclude that the error in this case was harmful, and reluctantly reverse the defendant's conviction.

SUFFICIENCY OF THE EVIDENCE
Although we have determined that the error in the case sub judice was harmful, resulting in the reversal of the defendant's conviction, we must now determine whether the evidence, including the testimony of the child, is sufficient to support the defendant's conviction. If the evidence taken as a whole is sufficient to support the defendant's conviction, then the state is entitled to retry the defendant. Lockhart, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265.
In his fourth assignment of error, the defendant asserts that the evidence was insufficient to convict him of the consummated offense because the state did not offer medical evidence to confirm penetration. In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. For the evidence to support a conviction for aggravated rape of a child less than twelve, the state must prove: "(1) anal or vaginal penetration deemed to be without consent of the victim because of (2) the victim's age at the time of the rape." State v. Jamison, 93-1633, p. 3 (La.App. 3 Cir. 5/4/94); 640 So.2d 438, 442, writ denied, 94-1439 (La.10/7/94); 644 So.2d 631.
While the physical evidence supported the identification of the defendant as the perpetrator of sexual activity, there was no conclusive physical evidence as to whether penetration had, in fact, occurred. This point is not dispositive, however, because the testimony of the victim did establish that penetration occurred. This court has held that it is well-settled that the "victim's testimony alone is sufficient to establish the fact of penetration." State v. Mitchell, 453 So.2d 1260, 1265 (La.App. 3 Cir.1984), writ denied, 457 So.2d 16 (La.1984) (citing State v. Rives, 407 So.2d 1195 (La.1981)). At trial in the case sub judice, the victim testified that the defendant "stuck his penis in my behind." Thus, there was sufficient evidence to establish that penetration had, in fact, occurred. We, therefore, find that the evidence, including the victim's testimony, is sufficient to support the conviction, and the state is entitled to retry the defendant. Having already concluded that the defendant's conviction warrants reversal, we need not address the remaining assignments of error.

CONCLUSION
For the above reasons, the defendant's sentence and conviction are reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.