744 So.2d 64 (1999)
STATE of Louisiana
v.
Benjy WELCH.
No. 98 KA 0638.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
Writ Granted November 19, 1999.
*65 Charles S. Long, Donaldsonville, Counsel for Appellee State of Louisiana.
J. Rodney Baum, Baton Rouge, Counsel for Appellant/Defendant Benjy Welch.
Before: FOIL, KUHN, and WEIMER, JJ.
KUHN, J.
The defendant, Benjy W. Welch,[1] was charged by bill of information with molestation of a juvenile over whom he had control or supervision, in violation of La. R.S. 14:81.2. He pled not guilty and waived his right to a jury trial. After a bench trial, defendant was convicted as charged. He received a sentence of ten years at hard labor. Defendant appealed, alleging three assignments of error, as follows:
1. The trial court erred in denying defendant's right to confrontation by requiring him to sit behind a screen during the victim's testimony.
2. The trial court erred in denying defendant's rights to counsel and confrontation *66 by refusing to allow defense counsel to speak with him prior to cross-examination of the victim.
3. The trial court erred in imposing an excessive sentence.

FACTS
At the time of the trial of this matter (August 5, 1997), the female victim was nine years old. She was only about one and one-half years of age when her mother, Tiffany Guedry Wilson, began living with defendant in a relationship which lasted for about five years. Although defendant was not her biological father, the victim considered him to be her father. Defendant and Ms. Wilson also had a child together, J. W.
At some point in late 1996, or early 1997, the victim confided in one or two of her young female friends that defendant was "fooling with her." The victim asked her friends not to tell anyone, because defendant had threatened the victim he would kill her mother (Ms. Wilson) if she told anyone about the sexual contact. However, one of her friends, A. B., repeated the allegation to her mother, who in turn related the allegations to the victim's mother, Ms. Wilson. The authorities interviewed the victim, who made a videotaped statement describing the sexual abuse. Specifically, the victim recounted repeated acts of defendant fondling her vagina and buttocks, which apparently began when she was in kindergarten or first grade. Thereafter, defendant was arrested.
At the trial, A.B. repeated the allegation made to her by the victim. The victim also recounted the acts of sexual abuse by defendant. An assistant coroner, Dr. John Sardisco, testified that his pelvic examination of the victim revealed that her hymen was not intact. The defendant denied any sexual abuse of the victim, contending that the victim's allegations resulted from her mother's suggestions.

ASSIGNMENT OF ERRORS NOS. ONE AND TWO
Defendant asserts the trial court denied him his constitutional right to confront the witnesses against him.[2] Specifically, defendant urges the procedure utilized by the trial court was inappropriate, and that he was denied effective cross-examination of the victim.
At trial, immediately before the victim was called to testify in court, the following colloquy occurred:
MR. LONG [prosecutor]:
Your Honor, at this time I would ask that the protection for the view of the defendant for the victim be instituted by the Court because the next witness is the victim.
THE COURT:
Mr. Vega, for the record?
MR. VEGA [defendant's counsel]:
Judge, I presume what Mr. Long is talking about is having my client sit behind the partition wall there with some paper taped up on it, and we would object to that, Your Honor. I think that in this instance the child should have to face the person that she's accusing of molesting her. I think that there's a sobering effect to the fact that, if someone is going to accuse you, then you ought to have the right to be confronted by them because there's some psychological things that may be going on between the mother and/or child that the child might very well not prevaricate, or lie, if she's faced with the person she's accusing. And so we would object to it, Your Honor.
THE COURT:
Well, under our law and under the jurisprudence, it's been that everyone is entitled to confront the accusers and to be in court and to see who it is that is *67 accusing you of a crime and to have yourself or your attorney cross-examine or ask questions to that witness. In the situation we have now is a situation that we have similar to this in other cases, that when we have witnesses of tender age that perhaps may suffer some traumaticmight have some traumatic effect just for being here in court, not necessarily because something ever happened to them, the law has provided us or given a way to protect that witness, so that we do not"we" meaning the court system itself, the Court, the judge, the attorneys, the ambiance of the room does not add to that traumatic event if it is a traumatic event. Because of that, once it's requested by this Court, this Court will abide by that, the wishes of the district attorney's office, and will shield the witness from actually viewing the defendant. The defendant, however, will be in court. He will be able to be present during her testimony. He is present during her testimony. He can see who it is that's confronting him, and also, and most importantly, his attorney is here to ask questions, cross-examine, and of course confer with his client as far as any cross-examination or questions he may want to ask. So, because of that, the Court's going to overrule your objection, is going to instruct Mr. Welch to take a seat behind the wall over there, or not the wall, but the shield.
MR. VEGA:
To which ruling of the Court we, again, object and specifically
THE COURT:
We'll note your objection for the record.
MR. VEGA:
specifically note that we believe that if child [sic] had to confront the person, that the relationship between the child and the father was such, not the father, and Mr. Welch, was such that it was a loving relationship and that she would not consistently tell what we think was planted in her mind.
THE COURT:
Call the witness, please.
Although he did not urge the applicability of La. R.S. 15:283[3] at the trial of this matter, on appeal, defendant asserts that based on this statute, the court is required to make a specific finding of necessity before a victim may be shielded from the defendant. Apparently, defendant contends the procedure set forth in § 283 is the sole and exclusive manner a child-victim may have her testimony presented. Relying on the United States Supreme *68 Court decision of Coy v. Iowa, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), and the Louisiana Supreme Court decision of State v. Murphy, 542 So.2d 1373 (La.1989), defendant maintains his conviction must be reversed.
Initially we note, because the victim did not leave the courtroom, we find La. R.S. 15:283 is inapplicable under the facts established in this record. The record clearly shows that the victim remained in the courtroom throughout the duration of her testimony. Thus, we must examine whether the procedure utilized by the trial court and actually demonstrated on the record violated defendant's right to be confronted with the witnesses against him.
In Coy v. Iowa,, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the U.S. Supreme Court examined whether use of a large screen between the defendant and the witness during the witness's testimony violated defendant's confrontation right. The screening procedure utilized was one which was in conformity with a statute enacted by the Iowa legislature. The defendant had been convicted for the sexual assault of two thirteen year old girls.
Each of the girls testified against the defendant. It was during the respective testimony of each girl that defendant was required to sit behind the large screen. Lighting adjustments permitted the defendant to view dimly each witness as she testified; however, the witnesses were unable to see defendant at all. In concluding defendant's right to confrontation was violated, the Court reasoned that the screen used in the trial court enabled the complaining witnesses to avoid viewing the defendant as each gave her respective testimony. Finding that the core guarantee in the right to confront face to face served the general perception that confrontation is essential to fairness, and helps to ensure the integrity of the factfinding process by making it more difficult to lie, the Court noted that the record lacked individualized findings that the particular witnesses needed special protection so as to warrant an encroachment on the defendant's right to confront the witnesses against him.
In State v. Murphy, 542 So.2d 1373 (La.1989), the Louisiana Supreme Court examined an earlier version of La. R.S. 15:283[4] (which also set forth a special procedure to take the child's testimony outside the courtroom) and determined the confrontation rights of a defendant convicted on charges of indecent behavior with a juvenile were violated. The child witness had been permitted to testify in the judge's chambers before a closed circuit television camera which transmitted her testimony to the jury in the courtroom. Present in chambers during testimony were the child, the judge, the prosecutor, the defendant and his attorney. In chambers, defendant was seated behind an opaque screen which shielded him completely *69 from the child witness's view. Relying on the U.S. Supreme Court decision of Coy, the Louisiana Supreme Court struck down as a violation of the constitutional right to confrontation that portion of § 283 which triggered applicability of the statutory procedure on "a non-specific `when justice so requires' standard." The Murphy court noted that, like the Iowa statute under scrutiny in Coy, Louisiana's procedure (set forth in § 283) also constituted a generalized legislative finding of desirability of conferring special protection to child witnesses. 542 So.2d at 1376.
Against this backdrop, we turn now to defendant's contentions. Although defendant asserts the holdings in Coy and Murphy require reversal of his conviction, we disagree.
Unlike the procedures scrutinized in the Coy and Murphy decisions, the procedure which is of record in this matter fails to demonstrate any violation of defendant's confrontation rights. In fact, the record indicates that the child-witness had the opportunity to see defendant and that defendant, likewise, had the opportunity to see the her. Although the trial court referred to "the shield" in instructing defendant where to sit during the victim's testimony, the record fails to establish exactly what limitations or obstructions, if any, were placed on the defendant's ability to view the victim.
We find the following colloquy between the victim and defendant's counsel noteworthy:
MR. VEGA:
Q.... I'm Mr. Vega, and I represent your daddy, Mr. Welch. Benji (sic) Welch, is that him?

A. Yes, sir.
Unquestionably, the record establishes that the child victim was well aware of the fact that defendant was in the courtroom and the child knew defendant could hear her testimony. Further, the fact that she identified defendant establishes he was visible to her.
It is axiomatic that in order for an appellate court to examine the issue of whether a defendant has suffered a denial of his constitutional right to confront his accusers, the only source of information from which we can arrive at a conclusion is the record itself. Nowhere in this record is the specific procedure employed by the trial court during the child-victim's testimony set forth. Compare Coy v. Iowa, 487 U.S. at 1014-15, 108 S.Ct. at 2800; State v. Murphy, 542 So.2d at 1374.
Other than the passing remarks by defense counsel in his objection to the state's motion "that the protection for the view of the defendant for the victim" be instituted, the record is devoid of any evidence, information or facts for this court to consider in making a determination of whether defendant's right to confrontation was violated. Accordingly, based on the showing made in this record, we find no merit in defendant's contention that his right to be confronted with the witnesses against him was violated by the method employed during the examination of the child victim.
Defendant also complains of the effectiveness of cross-examination and the right to confer with his attorney as further denials of his confrontation rights. Defendant points to the following colloquy between defense counsel and the trial court prior to cross-examination of the child victim:
THE COURT:
Okay, Mr. Vega, do you have any questions [directed to the child victim]?
MR. VEGA:
Excuse me a minute. Let me go talk to my client
THE COURT:
Absolutely.
Mr. VEGA:
Mr. Welch, Your Honor.
(OFF-THE-RECORD DISCUSSION.)
THE COURT:
Mr. Vega?

*70 MR. VEGA:
Yes, Your Honor. One (1) second with my client. It's a little awkward for us to be able to communicate.
THE COURT:
No matter which way it is, I'm not going to allow you to confer with your client whether he's sitting on top of your head or in the back of the courtroom. Let's go.
Defendant did not object at trial to the trial court's ruling which he contends constituted a limitation of his right to confer. Under La.C.Cr.P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence," defendant has waived any objection he may have had on the issue. See State v. McIntyre, 97-876, p. 9 (La.App. 5th Cir.1/27/98); 708 So.2d 1071, 1075. Notwithstanding the waiver of this objection, in light of the notation in the transcript of an off the record discussion, we cannot say defendant has established that he was limited from conferring with his attorney prior to cross-examination of the child victim.
In addressing defendant's assertions that his right to be confronted with the witnesses against him, we are mindful that the child victim testified under oath. The jury had the opportunity to observe the demeanor of the child victim and the child victim was subjected to cross-examination. Thus, the essential elements of the right to confrontation were satisfied. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Defense counsel specifically asked the child victim to identify defendant, referring to him as her "daddy," and asked if she understood her testimony could have serious ramifications for the defendant. The record demonstrates that defendant saw the child victim and she saw defendant in the courtroom. Additionally, the record clearly establishes that defendant could hear the child victim testify, the child victim was aware of defendant's presence in the courtroom and she knew defendant could hear her testimony. Based on the evidence in this record, defendant has failed to show that his right to be confronted by the witnesses against him has been violated. Accordingly, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. THREE
In this assignment of error, defendant contends that the trial court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines of La.C.Cr.P. art. 894.1. Specifically, defendant asserts that the trial court erred by imposing an "unduly harsh" sentence.
Louisiana Code of Criminal Procedure article 881.1 provides, in pertinent part:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
* * *
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
The defendant was sentenced on December 15, 1997. He filed a motion for an appeal on December 22, 1997. The trial court granted the defendant's motion for an appeal on December 29, 1997. The defendant filed a request for leave of court to file a motion for reconsideration of sentence, and filed a separate motion to reconsider sentence, on March 2, 1998. The *71 trial court granted the motion for leave to file a motion to reconsider sentence, but it did not modify the sentence.[5]
If an order of appeal has been entered, the sentence is legal, and the motion to reconsider sentence is not properly filed, and the trial court is without jurisdiction to take any action concerning the motion. See La.C.Cr.P. art. 916(3); State v. Clark, 93-0714 (La.App. 1st Cir.4/8/94); 635 So.2d 703, 706. In this case, since the defendant filed his motion to reconsider sentence more than thirty days following the imposition of sentence, the trial court did not set a longer period of time for filing the motion at sentencing, and an order of appeal had been entered, the trial court correctly refused to reconsider the sentence as it no longer had jurisdiction in the case. Furthermore, since the defendant did not comply with the time requirements of Article 881.1A(1), he is barred procedurally from having this assignment of error reviewed on appeal. See State v. Duncan, 94-1563 (La.App. 1st Cir.12/15/95) (en banc per curiam); 667 So.2d 1141. Accordingly, this assignment of error is without merit.

CONCLUSION
For the reasons set forth herein, the conviction and sentence of defendant, Benjy W. Welch, are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
WEIMER, J., concurs and assigns additional reasons.
FOIL, J., dissents and assigns reasons.
WEIMER, Judge, concurring.
I agree with the result and write further regarding the right to confrontation as it applies in this case.
Apparently, during the actual direct testimony of the child, the defendant was screened from the view of the child. Defense counsel referred to a "partition wall... with some paper taped up on it." The trial court referred to a "shield" as opposed to a "wall." During his testimony the defendant indicated he could not see the child during her direct testimony. However, during cross-examination of the child, the record indicates that the defendant did have the opportunity to see the child and the child had an opportunity to see the defendant. Unquestionably, the record established that the child was well aware of the fact that the defendant was in the courtroom and the child knew that the defendant could hear her testimony.
Louisiana Code of Criminal Procedure art. 17 provides, in part:
[A court] has the duty to require that criminal proceedings shall be conducted with dignity and in an orderly and expeditious manner and to so control the proceedings that justice is done.
Thus, the trial court is authorized to take those steps necessary to "control the proceeding that justice is done" from the standpoint of the State and the defendant.
Louisiana Revised Statutes 15:283, cited by the defendant, is not applicable because the case sub judice did not involve using closed circuit television and the statute states the court shall ensure the child cannot see or hear the accused. In this matter, the child remained in the courtroom and the child was aware the defendant could hear her testimony.
The right to confrontation is recognized by both the Louisiana and United States Constitutions. Article I, § 16 of the Louisiana Constitution of 1974 states in part that "[a]n accused is entitled to confront and cross-examine the witnesses against him." This language is to be contrasted *72 with the language of the Sixth Amendment to the United States Constitution which states in part that "the accused shall enjoy the right ... to be confronted with the witnesses against him."
In Maryland v. Craig, 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990), the United States Supreme Court held the right to confrontation is not absolute and may occasionally give way to considerations of public policy and the necessities of the case.
Crimes against children are among the most heinous in society. Children allegedly victimized by crime should not be further victimized by the system of justice. In this matter, the trial judge acted within his authority to control the proceeding. The right to confrontation does not mandate unlimited viewing of the victim by the accused. The Constitution mandates a right to confrontation, not intimidation. State v. Daniels, 484 So.2d 941, 944 (La. App. 1 Cir.1986).
FOIL, J. Dissenting.
For the following reasons, I respectfully dissent:
In his first assignment of error, the defendant asserts that the trial court erred in denying his right to confrontation by requiring him to sit behind a screen during the victim's testimony. I find merit in this assertion.
La. R.S. 15:283 provides, in pertinent part:
A. On its own motion or on the motion of the attorney for any party, a court may order that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury, when the court makes a specific finding of necessity based upon both of the following:
(1) Expert testimony that the child would be likely to suffer serious emotional distress if forced to give testimony in open court.
(2) Expert testimony that, without such simultaneous televised testimony, the child cannot reasonably communicate his testimony to the court or jury.
B. The court shall ensure that the child cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during the testimony of the child.
At trial, defense counsel objected and stated the grounds why he opposed the State's request to have the defendant placed behind a screen while the victim testified. As the defendant correctly notes in his brief to this Court, in order to alter the defendant's right to confrontation, the above statute requires "a specific finding of necessity" based upon expert testimony, which was clearly lacking in this case. The statute was amended by the legislature in 1991 in direct response to the decision in State v. Murphy, 542 So.2d 1373, 1376 (La.1989), holding that the statute's previous language containing a "when justice so requires" standard was unconstitutional. In light of defense counsel's objection, I feel that the trial court clearly erred in depriving the defendant of his right to confront the victim without a specific finding of necessity based upon expert testimony, as contemplated by the present version of the statute.
Furthermore, I cannot say that this error is harmless, as the defendant's guilt depended primarily upon a credibility determination, i.e., the victim's testimony versus the defendant's testimony. The issue of whether or not the victim would maintain her allegations if forced to confront the defendant in the courtroom directly impacted upon this credibility determination. Accordingly, I believe that we should reverse the defendant's conviction and sentence and remand this matter for a *73 new trial. At the new trial, if the State and/or the trial court should again seek to shield the defendant from the victim, or allow remote testimony via closed circuit television, such ruling should not be rendered until the trial court has made a specific finding of necessity based upon the expert testimony contemplated in La. R.S. 15:283A(1) and (2).
NOTES
[1] Although the transcript of the trial spells defendant's first name "Benji," we refer to the spelling utilized in the bill of information.
[2] See the Sixth Amendment of the U.S. Constitution and Art. I, § 16 of the Louisiana Constitution.
[3] Louisiana Revised Statutes Title 15, section 283 provides:

A. On its own motion or on the motion of the attorney for any party, a court may order that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury, when the court makes a specific finding of necessity based upon both of the following:
(1) Expert testimony that the child would be likely to suffer serious emotional distress if forced to give testimony in open court.
(2) Expert testimony that, without such simultaneous televised testimony, the child cannot reasonably communicate his testimony to the court or jury.
B. The court shall ensure that the child cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during the testimony of the child.
C. The only persons who may be present in the room with the child are the person or persons operating the audio-video equipment, the presiding judge, the attorneys for the state, the attorneys for the defendant, and any person, other than a relative of the child, whose presence is determined by the court to be necessary to the welfare and well-being of the child during his testimony. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony but does not permit the child to see or hear them.
D. Only the attorneys, or the presiding judge as authorized by law, may question the child.
[4] At the time of the Murphy decision, La. R.S. 15:283 provided:

A. On its own motion or on the motion of the attorney for any party, a court may order when justice so requires that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury. The only persons who may be present in the room with the child are the person or persons operating the audio-video equipment, the presiding judge, the attorneys for the state and defendant, the defendant, and any person, other than a relative of the child, whose presence is determined by the court to be necessary to the welfare and well-being of the child during his testimony. Only the attorneys, or the presiding judge as authorized by law, may question the child.
B. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony but does not permit the child to see or hear them. The court shall ensure that the child cannot see or hear the defendant unless such viewing or hearing is requested for purposes of identification. The court shall also ensure that the defendant is afforded the ability to consult with his attorney during the testimony of the child. (Underscoring added.)
[5] Technically, the trial court erred in granting defendant's request for leave to file this untimely motion to reconsider sentence. No "out of time" motion to reconsider sentence is contemplated by the Code of Criminal Procedure or found in the jurisprudence. See State v. King, 95-344, p. 1 n.1 (La.App. 3rd Cir.10/4/95); 663 So.2d 307, 308 n. 1, writ denied, 95-2664 (La.3/15/96); 669 So.2d 433.